Harry ROBINSON and Kay Robinson; Eva May McCarthy; and George Samuel Robinson, Plaintiffs–Appellants,

v.

VOLKSWAGENWERK AG and Herzfeld & Rubin, P.C., Defendants–Appellees.

No. 93–5168.

United States Court of Appeals, Tenth Circuit.

May 30, 1995.

Winton D. Woods, Tucson, AZ (Ronald D. Mercaldo and Lucile D. Sherman of the Law Offices of Ronald D. Mercaldo, Ltd., Tucson, AZ, Thomas Elke, Palo Alto, CA, and Maynard I. Ungerman, Ungerman & Iola, Tulsa, OK, with him on the briefs), for plaintiffs-appellants.

Richard M. Eldridge, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK (John H. Tucker, of the same firm, and Herbert Rubin and Daniel V. Gsovski, Herzfeld & Rubin, P.C., New York City, with him on the brief), for defendants-appellees.

Before EBEL and KELLY, Circuit Judges, and BROWN, District Judge.*

WESLEY E. BROWN, Senior District Judge.

Plaintiffs brought claims of common law fraud against Herzfeld & Rubin, P.C. ("H & R") and Volkswagenwerk Aktiengesellschaft ("Volkswagen AG"), as well as claims for negligence, products liability and breach of

---

* The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

warranty against Volkswagen AG. The district court held that all of the claims were time-barred and, in addition, found that the claims for negligence, products liability and breach of warranty were barred by the doctrine of claim preclusion. Plaintiffs now argue that the district court's rulings were erroneous. We exercise jurisdiction under 28 U.S.C. § 1291 and, for the reasons set forth herein, we affirm.

## I. Background.

This case is closely related to the separately filed appeal of *Robinson v. Audi AG*, 56 F.3d 1259 (10th Cir.1995). Many of the relevant facts are set forth in that opinion and will not be repeated here. We briefly summarize the facts in order to explain the issues presented in this appeal.

Plaintiffs were severely burned in an auto accident in 1977. The car in which they were traveling, a 1976 Audi 100 LS, burst into flames after being rear-ended by another car. Plaintiffs filed a products liability suit alleging that their injuries were caused by defective design and placement of the Audi 100 LS's gas tank and fuel system. Volkswagen of America, Inc., a national distributor of Audi automobiles, was named as a defendant in the case. Volkswagen AG was initially named by plaintiffs as the manufacturer of the car. Plaintiffs subsequently substituted Audi NSU Auto Union AG ("Audi NSU"),[1] a subsidiary of Volkswagen AG, as the manufacturer. The substitution was made after plaintiffs' counsel was informed by an attorney for one of the defendants that Audi NSU was in fact the manufacturer. The case was tried to a jury in the U.S. District Court for the Northern District of Oklahoma. In the course of trial, a dispute arose over whether certain documents submitted to the National Highway Traffic Safety Administration (NHTSA) on behalf of Volkswagen AG could be introduced in evidence. Counsel for Audi NSU argued that the submissions should be excluded, contending that they were irrelevant to the claims against Audi NSU. The district court held that the documents were not admissible. The jury subsequently returned a verdict in favor of Audi NSU and Volkswagen of America. After a series of rulings, the judgment eventually was affirmed on appeal. *See Robinson v. Volkswagen of America*, 803 F.2d 572 (10th Cir. 1986). *See also Robinson v. Audi NSU Auto Union*, 739 F.2d 1481 (10th Cir.1984).

a. *Complaint Alleging Common Law Fraud.* On October 5, 1987, plaintiffs filed a complaint in the U.S. District Court for the Northern District of Arizona naming as defendants Volkswagen AG, the parent company of Audi NSU, and H & R, the law firm that represented Audi NSU in the previous products liability trial and which also represented Volkswagen AG. Jurisdiction was asserted based on diversity of citizenship. The case was subsequently transferred to the Northern District of Oklahoma and was assigned to the same judge who had presided over the products liability trial. The complaint sought damages for common law fraud, products liability, negligence and breach of warranty. The latter three claims were based on the allegedly faulty design of the Audi 100 LS in which plaintiffs had been injured. The fraud claims were based on alleged misrepresentations by Audi NSU's attorney, Myron Shapiro, in the course of plaintiffs' product liability action against Audi NSU. These misrepresentations, according to the complaint, were made knowingly by Mr. Shapiro for the purpose of keeping the Volkswagen AG NHTSA documents from being used by the plaintiffs at trial. *See* Aplt.Supp.App. at 32–56. Plaintiffs alleged that, contrary to representations made by Mr. Shapiro, Volkswagen AG was the "near alter ego" of Audi NSU and, as such, the documents attributable to Volkswagen AG should have been admitted against Audi NSU. Plaintiffs further alleged that this fraud caused the court to exclude the NHTSA documents from the trial and led to the adverse jury verdict. The defendant Volkswagen AG was alleged to have acted "by and through H & R, their attorneys and duly authorized agents." Aplt.Supp.App. at 32; 54.

---

1. The briefs indicate that Audi NSU Auto Union Aktiengesellschaft is now known as Audi Aktiengesellschaft. In this opinion we will simply refer to the company as "Audi NSU."

**b. Complaint alleging fraud on the court.** In 1989, plaintiffs filed a separate complaint in the U.S. District Court for the Northern District of Oklahoma alleging that the judgment in their products liability trial had been obtained by means of a "fraud upon the court." This complaint requested equitable relief from the judgment based on the court's "inherent and continuing jurisdiction over its judgments." Like the previously filed complaint seeking damages for fraud, this complaint alleged that Audi NSU's attorney had misrepresented to the court the relationship between Audi NSU and Volkswagen AG in order to keep the NHTSA documents from being used against Audi NSU at the trial.

The district court conducted a bench trial on the allegations of fraud on the court. After hearing all of the evidence, the court concluded that there was no clear and convincing evidence that Audi NSU's attorney had engaged in a scheme to defraud the court through misrepresentation or nondisclosure. Consequently, the district court denied the request for relief from the judgment. Plaintiffs have appealed that ruling and, in the related appeal previously mentioned, *Robinson v. Audi AG*, 56 F.3d 1259 (10th Cir., 1995), we have now affirmed the district court's refusal to grant relief from the judgment in favor of Audi NSU and Volkswagen of America.

### II. District Court Ruling on the Common Law Fraud Complaint.

The instant appeal concerns the district court's ruling on the 1987 complaint against Volkswagen AG and H & R. As to the claims for common law fraud, the district court first held as a matter of law that plaintiffs' only recourse for such claims was under the provisions of Fed.R.Civ.P. 60(b) governing relief from judgments. The court

then concluded that plaintiffs' fraud claims were time-barred under Rule 60(b), noting that motions for relief predicated on "fraud, misrepresentation or other misconduct of an adverse party" must be brought "not more than one year after the judgment, order, or proceeding was entered or taken." *Id.* Plaintiffs' claims, the court observed, were raised more than one year after the judgment was taken. As to the claims for products liability, negligence and breach of warranty, the court found that these claims were barred by the doctrine of claim preclusion.[2]

### III. Discussion.

**a. Fraud claims.** In analyzing whether the district court properly granted judgment in favor of the defendants on plaintiffs' claims for common law fraud, we first examine the effect of the prior judgment against plaintiffs in their products liability suit with Audi NSU. Plaintiffs emphasize that they are not attempting in this action to have the previous judgment set aside. Aplt.Br. at 17. Rather, they are seeking to recover damages said to be caused by the defendants' fraud in the course of obtaining that judgment. It is plaintiffs' position that in Oklahoma "a civil action lies for fraud committed in connection with a lawsuit without setting aside any judgment entered in that lawsuit." *Id.* at 7. Under the circumstances of this case, however, we find that the previous judgment operates as a bar to the damages claimed by the plaintiffs.

Under the doctrine of collateral estoppel, or "issue preclusion," once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).[3] *See*

---

**2.** The district court also held that these claims were barred by the Oklahoma statute of limitations. We do not address the statute of limitations issue because we agree that the claims are barred by claim preclusion.

**3.** Although there is some confusion as to whether application of collateral estoppel is governed by federal or state law in successive diversity actions, *see Frandsen v. Westinghouse*, 46 F.3d 975, 977 (10th Cir.1995), we conclude that the result

in this case is the same regardless of whether Oklahoma law or federal law is applied.

We note that some Oklahoma cases indicate there must be "identity of parties," or mutuality, in order for collateral estoppel to apply. The Oklahoma Supreme Court has recognized, however, that in some circumstances collateral estoppel may be asserted defensively by one who was not a party to the first action. *ANCO Mfg. v. Swank*, 524 P.2d 7, 13 (Okla.1974). In light of

*Wilson v. Kane,* 852 P.2d 717, 722 n. 23 (Okla.1993). Issue preclusion will not apply, however, if the party against whom it is asserted did not have a full and fair opportunity to litigate the issue in the earlier case. *See Allen, supra; Veiser v. Armstrong,* 688 P.2d 796, 800 (Okla.1984).

■ The jury's verdict in favor of Audi NSU on the plaintiffs' product liability claims necessarily means that the jury found at least one of the following facts: (1) that no defect existed in the Audi 100 LS fuel tank; (2) that the alleged defect did not make the product unreasonably dangerous; or (3) that the alleged defect in the Audi 100 LS fuel tank did not cause the plaintiffs' injuries. *See* Aplt.Br. at 17. The jury's determination of any of the foregoing facts was both "actually decided in the suit" and was "necessary to support the judgment." *See Restatement (Second) Judgments* § 27. Contrary to plaintiffs' argument, we conclude that the existence of any one of these facts is incompatible with the damages for fraud claimed by the plaintiffs in this action. The damages claimed include plaintiffs' loss of the lawsuit against Audi NSU, loss of the opportunity to try the case with the most compelling evidence, loss of the chance of prevailing in the underlying suit with the most compelling evidence, loss of the settlement value of the case, loss of their right to a full and fair opportunity to present their case to a jury of their peers and to recover the full damage to which they would have been entitled upon the jury's verdict, as well as the value of the chance to win the lawsuit with the admission of the exhibits that were kept out as a result

of the defendants' alleged fraud. Aplt. Supp.App. at 55–56. Each of these claims of damages rests upon an unstated but common foundation: they would require plaintiffs to show that, but for the alleged fraud leading to the exclusion of the NHTSA documents, the jury would have found in the plaintiffs' favor. But to show this, plaintiffs would in turn have to establish that the Audi 100 LS gas tank was in fact defective; that it was unreasonably dangerous; and that it was the cause of the plaintiffs' injuries in the accident. Thus, plaintiffs claims of damages for fraud are based upon assertions of fact that are inconsistent with the facts supporting the prior judgment.[4]

■ Given this inconsistency, we think the trial court was correct insofar as it concluded that plaintiffs could not pursue their claims for damages without first obtaining relief from the judgment. However, the district court was incorrect in stating that any request for relief from the judgment was barred by the one-year time limit placed on motions under Fed.R.Civ.P. 60(b). Rule 60(b) places a one-year time limit on certain motions seeking relief from a judgment, including motions premised upon fraud or misconduct of an adverse party. The rule, however, "does not limit the power of the court to entertain an independent action to relieve a party from a judgment...." *Id.* Thus, if the right to make a motion is lost because of the time limits of Rule 60(b), there is another procedural remedy available: "by a new or independent action to set aside a judgment upon those principles which have heretofore

the circumstances of this case, including the alleged relationship between the defendants in this and the previous trial, we think that Oklahoma would not prohibit the defensive assertion of collateral estoppel on the sole grounds that the defendants here were not parties to the previous action. *See Restatement (Second) Judgments* §§ 29 and 51 (1982). Mutuality is not required under federal law. *Blonder–Tongue Labs. v. Univ. Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

4. Plaintiffs argue that some of their damages for fraud exist independently of the outcome of the underlying suit. We recognize that the claimed damages include the value of "lost chances" in the underlying suit. In this context, however, the value of such lost chances is purely specula-

tive absent a showing that the result of the suit would have been different. That showing would require the plaintiffs to establish facts contrary to those underlying the first judgment. Moreover, even if, as plaintiffs argue, the damages could be considered independent of the outcome of the first suit, we see no indication that Oklahoma has recognized a doctrine of "lost chance" of prevailing in a lawsuit that would permit plaintiffs to recover such damages. *See* Aplt.Supp.App. at 132. *Cf. Terrell v. Gotcher,* 197 Okla. 650, 174 P.2d 229, 230 (Okla.1946) (Plaintiff was attacking the validity of a previous judgment by bringing an action for damages he claimed he would have recovered in the first action had it not been for fraud practiced upon him by the defendants' attorneys.)

been applied in such an action." *Id.*, Advisory Committee Notes to 1946 Amendment. *See W. Virginia Oil & Gas Co. v. Breece Lumber Co.*, 213 F.2d 702, 706 (5th Cir.1954). On the claims now before us, the plaintiffs clearly proceeded by way of filing a separate action rather than by motion in the action giving rise to the judgment. "Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations." Fed.R.Civ.P. 60, Advisory Committee Notes to 1946 Amendment. Thus, the one-year limit in Rule 60(b) does not apply to the plaintiffs' complaint.

■■■ Nevertheless, we conclude that on the record before us the district court's dismissal of plaintiffs' common law fraud claims was appropriate. *See Jones v. Bank of Santa Fe*, 40 F.3d 1084, 1087 (10th Cir.1994) (Appellate court may affirm the district court judgment on any basis supported by the record.) As an initial matter, plaintiffs have steadfastly maintained that they are not seeking relief from the underlying judgment in favor of Audi NSU. Aplt.Br. at 12 ("We [emphasize] once again that this common law fraud action is not for relief from the judgment but for damages caused by the judgment....."). If that is the case, then in our view, the common law fraud claims are barred because they are inconsistent with facts underlying the prior judgment. Notwithstanding their previous comment, however, plaintiffs have also argued that the alleged fraud should equitably estop the defendants from claiming issue preclusion, Aplt. Br. at 14, and that the alleged fraud deprived the plaintiffs of a full and fair opportunity to litigate the issues in the underlying trial. Aplt.Rep.Br. at 14. Although not denominated as such, these arguments amount to assertions that the plaintiffs should be relieved from the effects of the judgment.[5] We thus construe plaintiffs' complaint to be an "independent action" for relief from the judgment recognized by Rule 60(b).

■■■ An independent action permits the granting of the various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of the Federal Rules. *See* Fed.R.Civ.P. 60, Notes of Advisory Committee on 1946 Amendment. Such a proceeding is regarded as equitable in nature and is directed to the discretion of the trial court. *Zimmerman v. First Fed. Savings & Loan Ass'n*, 848 F.2d 1047, 1053 (10th Cir.1988). Clearly, the equitable principles recognized by the courts authorize relief from judgments in certain cases of fraud.[6] We think it cannot be fairly disputed, however, that in addressing plaintiffs'

---

5. As previously mentioned, the courts have recognized that collateral estoppel should not be applied where the person against whom it is asserted did not have a full and fair opportunity to litigate the facts supporting the judgment. Such a determination "will necessarily rest on the trial court's sense of justice and equity." *Blonder–Tongue Labs. v. Univ. Foundation*, 402 U.S. 313, 334, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). Although this inquiry normally focuses on whether there were procedural limitations or a lack of incentive to fully litigate an issue in the prior proceeding, concealment of material information by a party may justify a refusal to give preclusive effect to a judgment. *See Restatement (Second) Judgments*, § 28, Comment j.

This exception to the doctrine of collateral estoppel provides a means of avoiding the effects of a prior judgment in the course of a subsequent action. It "may be perceived as a proceeding to obtain what is traditionally known as equitable relief in a sublitigation within the framework of the action in which the judgment is relied upon." *See Restatement (Second) Judgments* § 80, Comment a. As such, it mirrors the independent action in equity recognized by Fed.R.Civ.P. 60(b)

and, for purposes of this case, we see no difference between the two.

6. The type of fraud necessary to obtain relief from a fraudulently obtained judgment, filed either as a post-judgment motion in the original action to set aside the judgment or as an independent action for damages incurred because of the fraud that led to the judgment, is considerably narrower than common law fraud. The *Restatement (Second) of Judgments* § 70(1) provides for relief from a judgment if the judgment: "(a) [r]esulted from corruption of or duress upon the court or the attorney for the party against whom the judgment was rendered, or duress upon the party, or (b) [w]as based upon a claim that the party obtaining the judgment knew to be fraudulent." In the case before us, we have no allegations of "corruption of or duress upon the court or the attorney for the party against whom the judgment was rendered." Thus, relief would have to be predicated on an allegation that the earlier judgment was based on a claim that the party obtaining the judgment *"knew to be fraudulent."* This is the same claim, predicated on the same facts, that was asserted in *Robinson v. Audi AG*, 56 F.3d 1259 (10th Cir.1995). The rulings

claim of "fraud on the court" in *Robinson v. Audi AG*, 56 F.3d 1259 (10th Cir.1995), the trial court expressly rejected as unsupported by the evidence the same factual basis now asserted by the plaintiffs as justification for avoiding the prior judgment.

In their "fraud on the court" complaint plaintiffs set forth allegations of fraud identical in all material respects to those asserted in the complaint against Volkswagen AG and H & R. The trial court conducted a bench trial on those allegations and, after hearing all of the evidence, concluded that there was no clear and convincing evidence that Audi's attorney, Myron Shapiro, engaged in a scheme to defraud the court through misrepresentation or nondisclosure. Plaintiffs have identified nothing that would indicate they did not have a full and fair opportunity to present their claims of fraud in that forum. Although plaintiffs suggest that the "fraud on the court" inquiry was somehow more limited than the fraud now at issue, that suggestion is belied by the record. The trial court's finding is simply incompatible with the allegations of fraud in the complaint against Volkswagen AG and H & R and precludes relitigation of the fraud issue in this action. *Bulloch v. Pearson*, 768 F.2d 1191, 1193 (10th Cir.1985). As such, plaintiffs have established no basis for obtaining relief from the judgment in favor of Audi NSU and the district court did not err in dismissing the claims for common law fraud.

 b. *Claims of Negligence, Products Liability and Breach of Warranty.* We also conclude that the district court properly dismissed the remaining claims against Volkswagen AG. Under the doctrine of res judicata, or "claim preclusion," a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The product liability claim against Volkswagen AG was previously asserted against Audi NSU, the difference being that plaintiffs now allege that Volkswagen AG had a controlling relationship with Audi NSU and is therefore responsible for the torts of its subsidiary. If true, however, this "near alter ego" relationship would be sufficient to establish "privity" between the two corporations such that Volkswagen AG is entitled to assert the previous judgment as a bar to the claim now asserted. *See e.g. Pan American Match, Inc. v. Sears, Roebuck and Co.*, 454 F.2d 871, 874 (1st Cir.1972). *See also Restatement of Judgments (Second)* § 51. The judgment also bars the claims of negligence and breach of warranty in light of the fact that those claims are based on the same transaction that gave rise to the products liability action. *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir.1988). In concluding that the dismissal of these claims was proper, we do not ignore the fact that fraud may provide a basis for relief from res judicata, nor do we overlook plaintiffs' allegations that the relationship between Volkswagen AG and Audi NSU was fraudulently covered up. Plaintiffs were given an opportunity to prove these allegations, however, and the district court concluded that the evidence did not support them.

IV. *Conclusion.*

The judgment of the district court is AFFIRMED.

---

in that case are a bar to plaintiffs trying to raise those claims here. Furthermore, without any basis to reopen or challenge the propriety of the prior judgment against them, the plaintiffs cannot establish damages and thus their common law claim for fraud must also fail.