Huel WASHINGTON and Marisa Washington, a minor, By and Through her Guardian Ad Litem, Huel Washington, Henry Jones, La Ronda Smith, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DUTY FREE SHOPPERS, a partnership, Etsuo Shimizu, and Adrian Bellamy, Defendants.

No. C–87–5501 WHO.

United States District Court,
N.D. California.

June 13, 1988.

Elizabeth J. Heller, Law Office of John L. Burris, Oakland, Cal., for plaintiffs.

William H. Hastie, Arnelle & Hastie, San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

This civil rights case, before the Court on defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), addresses the question of first impression in this Circuit: whether or not agents and employees of a store that is a limited partnership can *conspire* with one another to deprive persons of the accommodations, privileges, and services offered by defendants in violation of the civil rights laws.[1] 42 U.S.C. § 1985(3).

For the reasons following, the Court finds that the agents and employees of a limited partnership *can* conspire to violate § 1985(3) and, thus, deprive persons of their civil rights.

### I.

### A.

Plaintiffs, Huel Washington, Marisa Washington, a minor, by and through her Guardian Ad Litem, Huel Washington, Henry Jones, and La Ronda Smith, on behalf of themselves and all others similarly situated, bring this class action against defendants, Duty Free Shoppers ("DFS"), a limited partnership, Etsuo Shimizu, the Customer Relations Manager of DFS, and Adrian Bellamy, the Chief Executive Offi-

cer of DFS. Plaintiffs, who are Black, allege that defendants conspired to prevent them from shopping at DFS because of their race. They further charge that defendants maintain a policy and practice designed to deny Blacks the accommodations, privileges, and services offered by defendants on account of their race in violation of 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, and California Civil Code § 51.

Defendants have moved to dismiss the §§ 1983, 1985(3), and 1986 causes of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs concede that they have failed to state a claim under § 1983, but contest defendants' motion to dismiss their §§ 1985(3) and 1986 claims. The § 1986 claim is largely dependent upon the validity of the § 1985(3) cause of action. *Trerice v. Pedersen,* 769 F.2d 1398 (9th Cir.1985). Thus, the critical issue before the Court is whether the complaint states facts sufficient to support a claim under § 1985(3), specifically, by charging a limited partnership with conspiring with its agents and employees to deprive others of their civil rights.

### B.

DFS operates a retail store in San Francisco. It sells gift items and souvenirs and also takes preorders for duty- and tax-free merchandise that the customers later pick up at San Francisco International Airport. The store is required by law to restrict duty-free sales to international travelers. About twenty percent of DFS' sales involve

---

1. 42 U.S.C. § 1985(3) provides:

 If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the elec-

 tion of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

duty-free merchandise, but approximately eighty percent of DFS' business is the sale of retail items that anybody can purchase.

In January 1987, plaintiff La Ronda Smith, a black woman, alleges she attempted to enter the DFS retail store, but a rope barrier near the door prevented her from simply walking into DFS. She claims an employee of DFS asked her if she had a passport, and when she replied that she did not and that she only wanted to browse, the employee shook his head "no," and Smith left without passing beyond the doorway of DFS.

On or about August 1, 1987, plaintiff Henry Jones, a black man, entered DFS and was immediately approached by an employee who told him that only tourists could shop in the store and that he would have to show a passport in order to shop there. When Jones asked why, the employee said that it was the store's policy. Jones alleges that no other customers were approached in such a fashion.

On or about August 29, 1987, plaintiff Huel Washington, a black man, entered DFS. He alleges that as soon as he entered the store an employee approached him and asked whether he had a passport or an airline ticket. Washington contends that when he told the employee he had neither the employee told him that he could not shop in the store without them. Washington left the store. He claims that no other customer was approached in such a manner.

Later that day, plaintiff Marisa Washington, a fifteen-year old black girl, entered DFS. She claims that as soon as she entered an employee made an announcement in Japanese over a loudspeaker. She alleges the announcement served as notification that a black person had entered the store. After the announcement, she claims an employee told her that she could not be in the store if she did not have a passport. She contends that no one else was similarly approached.

Plaintiffs allege that it is the policy and practice of DFS to discriminate against black customers by using a system of code words and other signals to announce when a black person enters the gift shop. They assert that after such an announcement it is the policy and practice of employees of DFS to approach black customers, and only black customers, and ask whether they have a passport or an airline ticket for the purpose of preventing Blacks from shopping in the store.

## II.

### A.

Section 1985(3) of Title 42 of the United States Code prohibits "two or more persons" from conspiring to deprive any person of the equal protection of the laws or of equal privileges and immunities under the laws. Defendants claim a limited partnership cannot be a conspirator. They rely on the so-called intracorporate or intraenterprise conspiracy doctrine in support of their motion to dismiss. That doctrine simply stated is that a corporation or enterprise cannot conspire with its agents acting within the scope of their employment. The doctrine had its genesis in an antitrust case, *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).[2] In *Nelson*, the Court stated:

It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general

---

**2.** The Ninth Circuit held in *Davis & Cox v. Summa Corp.*, 751 F.2d 1507 (9th Cir.1985), held that a chief corporate officer cannot as a matter of law conspire with his own corporation. In *Davis & Cox,* Davis charged a chief corporate officer with conspiring with his own corporation to terminate his employment and to withhold payment of deferred compensation and other monies. The alleged conspiracy centered around one corporate officer and his own corporation. The instant case, however, involves many individuals ranging from the owners of the store to lower-level employees. *Davis & Cox* is further distinguishable in that it involved a state tort claim and not a claim under federal civil rights statutes, a corporation was a defendant and not a limited partnership, and Davis did not allege a continuing practice of unlawful conduct.

rule that the acts of the agent are the acts of the corporation.

200 F.2d at 914. The premise of the *Nelson* rule is that acts of an agent within the scope of employment are exclusively acts of the corporation; the acts are in essence committed by one person, the corporation, and the agent has no identity separate from the corporation. The *Nelson* court found that in these situations the requisite plurality of actors for a conspiracy is absent.

The first case to extend the intracorporate conspiracy doctrine to the civil rights arena was *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir.1972). In *Dombrowski*, the Seventh Circuit stated:

> [T]he statutory requirement that "two or more persons ... conspire ..." is not satisfied by proof that a discriminatory business decision reflects the collective judgment of two or more executives of the same firm.... [I]f the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by this statute.

459 F.2d at 196. A number of circuits follow the *Dombrowski* rule that a corporation and its agents generally cannot form a conspiracy under § 1985(3). *See Garza v. City of Omaha*, 814 F.2d 553 (8th Cir. 1987); *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir.1985); *Doherty v. American Motors Corp.*, 728 F.2d 334 (6th Cir.1984); *Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir.1976).

Antitrust conspiracies, however, are a unique breed. Antitrust laws were designed to promote competition. By prohibiting conspiracies in restraint of trade, antitrust laws focus on collaboration among competitors. Agreements between agents of a single business ordinarily do not give rise to the evils that antitrust laws seek to prevent. Thus, courts traditionally have not treated concerted action within a corporation as establishing an antitrust conspiracy. *See Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir.1984); Note, *Intracorporate*

*Conspiracies Under 42 U.S.C. § 1985(3)*, 92 Harv.L.Rev. 470 (1978); Note, *Intracorporate Conspiracies Under 42 U.S.C. § 1985(3)*, 13 Ga.L.Rev. 591 (1979). Moreover, in the anti-trust context actions within a single business are presumed to be procompetitive and, therefore, beneficial to society. *Rebel Van Lines v. City of Compton*, 663 F.Supp. 786, 792 (C.D.Cal. 1987).

In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984), the Supreme Court demonstrated that the justifications for the intracorporate conspiracy doctrine derived from the special nature of antitrust law:

> [I]t is perfectly plain that an internal "agreement" to implement a single, unitary firm's policies does not raise the anti-trust dangers that § 1 was designed to police. The officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals.... For these reasons, officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy.

Nowhere did the Court justify the doctrine on the basis that a corporation can act only through its agents and that acts of an agent are acts of the corporation, thus preventing a plurality of actors.

**B.**

 Plaintiffs argue, and this Court agrees that the intracorporate conspiracy doctrine should not be extended to §§ 1985(3) and 1986 because its rationale does not apply in the civil rights context. In the area of civil rights, a real danger exists from the collaboration among agents of a single business to discriminate. There is no reason to believe that discrimination by an individual business is less harmful than discrimination by multiple businesses, or that discrimination by a single business deserves to be protected because it confers any benefit on society. The Third, Fifth, and Eleventh Circuits, as well as district

courts in this Circuit and others, have repudiated *Dombrowski* and refused to extend the intracorporate conspiracy doctrine into the area of civil rights. *See Stathos; United States v. Hartley,* 678 F.2d 961 (11th Cir.1982); *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594 (5th Cir. 1981); *Novotny v. Great American Federal Savings & Loan Ass'n,* 584 F.2d 1235 (3d Cir.1978) *(en banc), rev'd on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Rebel Van Lines,* 663 F.Supp. at 792; *Walker v. Woodward Governor Co.,* 631 F.Supp. 91 (N.D.Ill.1986); *Jacobs v. Board of Regents,* 473 F.Supp. 663 (S.D.Fla.1979).

Section 1985(3), like its companion civil rights statutes, was designed to eliminate racial discrimination in our society. As Justice Stewart wrote in *Jones v. Mayer Co.,* 392 U.S. 409, 443, 88 S.Ct. 2186, 2205, 20 L.Ed.2d 1189 (1968), concerning § 1982:

> At the very least, the freedom that Congress is empowered to secure under the Thirteenth Amendment includes the freedom to buy whatever a white man can buy, the right to live wherever a white man can live. If Congress cannot say that being a free man means at least this much, then the Thirteenth Amendment made a promise the Nation cannot keep.

Conspiracies to discriminate and to deprive Blacks or other minorities of these basic rights can only perpetuate inequality, even if formed and carried out within a single business. This Court finds that agreements to discriminate between a business and its employees threaten exactly the group danger at which conspiracy liability is aimed by the enactment of §§ 1985(3) and 1986. Thus, the view of a business as a single legal actor becomes a fiction without a purpose. *See Dussouy,* 660 F.2d at 603; *Hartley,* 678 F.2d at 970; 92 Harv.L. Rev. at 471, 478–79.

### C.

■ Civil rights statutes should be accorded " 'a sweep as broad as [their] language.' " *Griffin v. Breckenridge,* 403 U.S. 88, 97, 91 S.Ct. 1790, 1796, 29 L.Ed.2d 338 (1971). On its face, § 1985(3) simply requires that "two or more persons" con-

spire. *Novotny,* 584 F.2d at 1257. The legislative history of § 1985(3) provides no support for limiting the scope of this language by engrafting the intracorporate conspiracy doctrine onto this statute. *Accord id.; Rebel Van Lines,* 663 F.2d at 792. Plaintiffs allege in their complaint that agents, employees, and the owners of DFS conspired to deny them the equal protection of the laws, and committed acts in furtherance of the agreement to their deprivation. They also allege that DFS has discriminated against black customers for the past ten years. The agents and employees of DFS are individuals with minds and wills of their own. They agreed with DFS' policy to discriminate, carried out that policy, and allowed the discriminatory effects to persist over time. Where agents and employees agree with a discriminatory policy of a partnership, and act in furtherance of the agreement to the deprivation of others, the partnership and agents have conspired under § 1985(3). For the reasons stated herein, the Court finds the plurality of actors requisite to state a claim of conspiracy under § 1985(3). For the reasons stated herein, the Court finds the plurality of actors, requisite to state a claim of conspiracy under § 1985(3).

### III.

■ In addition to the § 1985(3) claim, plaintiffs assert that the individual defendants violated 42 U.S.C. § 1986. That cause of action requires that a defendant know of a § 1985(3) conspiracy and "having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do...." 42 U.S.C. § 1986. A plaintiff cannot state a claim under § 1986 absent a valid claim under § 1985(3). *Trerice v. Pedersen,* 769 F.2d 1398 (9th Cir.1985).

■ The Court finds that the complaint states facts sufficient to support a claim under § 1986. It has already found that the complaint states a valid § 1985(3) cause of action. The complaint alleges that each defendant had knowledge of the conspiracy to discriminate and had the power to prevent or to aid in preventing the commission

of acts in furtherance of the agreement. The complaint states that each defendant neglected or refused to prevent the acts of discrimination that harmed plaintiffs. The complaint clearly states facts sufficient to support a cause of action.

## IV.

The Court is not concerned that this ruling will turn § 1985(3) into an all-purpose federal tort law. In *Griffin*, the Supreme Court held that § 1985(3) applies only to actions involving "some racial, or perhaps otherwise class-based, invidiously discriminatory animus...." 403 U.S. at 102, 91 S.Ct. at 1798. Accordingly, plaintiffs who bring claims pursuant to §§ 1985(3) and 1986 still bear the heavy burden to prove discriminatory intent on the part of defendants.

IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss the §§ 1985(3) and 1986 claims are denied because plaintiffs have stated claims upon which relief may be granted. Where plaintiffs allege that agents and employees of a business join in and act in furtherance of an agreement with their employer to unlawfully discriminate, plaintiffs state a claim for relief for unlawful conspiracy under § 1985(3). Where plaintiffs allege that agents and employees knew of a § 1985(3) conspiracy, had the power to prevent or to aid in preventing it, and neglected or refused to do so, plaintiffs have stated a claim under § 1986.

2. Defendants' motion to dismiss the § 1983 claims is granted.